UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOSE LUIS DISLA MELO,
                 Defendant.

20-CR-29 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Defendant Jose Luis Disla Melo is charged with participating in a conspiracy to distribute 400 grams of fentanyl in violation of 21 U.S.C. § 841(b)(1)(A). He moves to suppress evidence recovered at the time of his arrest in December 2019. The motion has been fully briefed (Dkt. Nos. 40-44, 49, 50), and this Court conducted an evidentiary hearing on March 30, 2021.

## I. Factual Background

    The following facts are established by the criminal complaint (Dkt. No. 1), the testimony of DEA Special Agent Patrick Quinn, and the exhibits received in evidence.

    In December 2019, the DEA obtained a GPS location warrant on a phone number later identified as belonging to co-defendant Mario Ramos. The DEA had probable cause to believe that the phone was being used in connection with cross-country shipments of narcotics.[1] Law enforcement identified the phone as moving from California to the New York City area. On December 15, 2019, law enforcement established active surveillance of a tractor-trailer truck in which the phone was traveling through New Jersey. Officers observed that the truck was occupied by two men: Ramos and co-defendant Carlos Ramirez.

---

[1] Disla Melo does not challenge the GPS location warrant or the basis for officers' tracking and surveillance of the truck.

After depositing the trailer, the truck (only the cab) proceeded to a parking lot in Kearny, New Jersey. It parked next to a building that contained several stores, including a Verizon store. Law enforcement officers set up surveillance at the parking lot and observed the parked truck for approximately one hour. (*See* GX 1-2 (maps); GX 3-6 (photographs).)

At about 2:30 p.m., an SUV, driven by an Uber driver and with Disla Melo in the rear seat, drove behind the building from the opposite side of where the truck was parked. The officers then saw Ramirez exit the truck from the passenger side, carrying a red bag made of heavy material (not paper or plastic). (GX 13.) Ramirez walked to the alleyway behind the building, where the SUV had just driven. At this point he was out of the view of the officers for two to three minutes. Then the SUV emerged from the alleyway, immediately followed by Ramirez, who was no longer carrying the red bag as he walked back to the truck. Special Agent Quinn began following the SUV in his vehicle as it exited the parking lot and drove away.

Agent Quinn testified that, after following the SUV for seven to ten minutes, he saw the SUV change lanes without signaling. (Tr. 20.)[2] He also testified that he observed the passenger in the SUV (Disla Melo) "manipulating something and fidgeting around in his seat." (Tr. 20.) About five minutes later, Agent Quinn stopped the SUV and had it pull over in front of a gas station. (GX 7.) Agent Quinn asked for the Uber driver's license, asked him to step out of the SUV, and obtained oral and written consent from the driver to search the SUV. (Tr. 22; GX 12.) Agent Quinn then opened the passenger door where Disla Melo was seated. Next to him Quinn saw what appeared to be the red bag that Ramirez had been carrying (GX 13) and a suitcase.

---

[2] The Uber driver testified to the effect that he did not believe he changed lanes without using his turn signal. (Tr. 59 "That I'm aware of I did [use the turn signal] because I have been driving over 20 years and I drive well.") In any event, as explained below, it is unnecessary to resolve this factual dispute.

2

Quinn called for a K-9 unit, which was already on the surveillance team, and it arrived within five minutes. (Tr. 23.) The dog alerted positively to the rear passenger door. The officers searched the SUV and recovered nine kilograms of fentanyl in the suitcase. (GX 8, 9.)

Several hours later, at the station, Disla Melo signed a *Miranda* waiver in Spanish and made certain statements to law enforcement officers. (GX 11; Tr. 25.)

**II.     Discussion**

The Fourth Amendment permits officer to search a vehicle without a warrant "if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). Probable cause for a search exists "when the facts available to [the officer] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (quotation modified). "[E]xperience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a lay[person] may not." *Gaskin*, 364 F.3d at 457.

Disla Melo argues that there was no lawful basis for stopping the SUV, pointing out that the criminal complaint does not mention any traffic infraction and that no ticket was given to the driver. It is unnecessary to resolve the dispute about whether a traffic infraction occurred, however, because the Court finds that there was probable cause to stop and search the SUV based on other facts known to law enforcement. This finding is based, among other evidence, on the testimony of Special Agent Quinn, which the Court finds credible.

First, it is undisputed that officers had probable cause to believe that the truck with Ramos and Ramirez was engaged in transportation of narcotics. The officers' observation of the truck parked at the parking lot for an hour, apparently waiting for someone, was suspicious. The

3

series of events that followed — the arrival of an SUV into the alleyway behind the building; Ramirez's walking into the alleyway with a red bag; and Ramirez's returning to the truck *without* the red bag as the SUV exited the alleyway — gave law enforcement strong reason to believe that a drug transaction had just occurred. The totality of these circumstances, together with the experience and training of the officers, provided probable cause to believe that evidence of a drug crime was contained in the SUV. Therefore, Agent Quinn had probable cause to stop and search the SUV irrespective of any traffic infraction. Even if the totality of the circumstances established only "reasonable suspicion," rather than probable cause, such suspicion ripened into probable cause as soon as Agent Quinn saw the red bag next to Disla Melo in the SUV. Probable cause justified Agent Quinn in searching the vehicle and the suitcase even before the K-9 alerted the officers to the presence of drugs.

The Court concludes, therefore, that the search was lawful.

## III. Conclusion

For the foregoing reasons, Defendant Disla Melo's motion to suppress physical evidence and statements is denied. The Clerk of Court is directed to terminate the motions at Docket Number 40.

SO ORDERED.

Dated: April 28, 2021
      New York, New York

_____
J. PAUL OETKEN
United States District Judge